**Lisa Ann MICHELS, Plaintiff,**

v.

**GREENWOOD LAKE POLICE DE-PARTMENT, Chief Mark Kotlarich, Detective John Hansen, District Attorney Francis Phillips, ADA Mary Ellen Albanese, ADA Mark Bianchi, ADA Tanine Nadazynski, ADA Melissa Gilbon, Orange County, Orange County District Attorney's Office, Defendants.**

**No. 03 CIV. 10182(SCR).**

United States District Court, S.D. New York.

Aug. 2, 2005.

Lisa Ann Michels, Greenwood Lake, NY, pro se.

James A. Randazzo, Servino Santangelo & Randazzo LLP, Hawthorne, NY, Laura Wong–Pan, County Attorney, County of Orange, New York Law Dept., Goshen, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

## I. Background

### A. Procedural Posture

Lisa Ann Michels (the "Plaintiff"), proceeding *pro se,* filed a complaint against the Defendants on December 23, 2003, under 42 U.S.C. § 1983. Although the Plaintiff failed to specifically identify which of her constitutional rights had been allegedly violated, this Court reads the complaint as alleging her rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment had been violated. Defendants Greenwood Lake Police Department, Mark Kotlarich, and John Hansen (the "Police Defendants") filed a motion to dismiss claims brought against them by the Plaintiff. Defendants District Attorney Francis Phillips, ADA Mary Ellen Albanese, ADA Mark Bianchi, ADA Tanine Nadazynski, ADA Melissa Gilbon, Orange County, and Orange County District Attorney's Office (the "County Defendants") filed a motion to dismiss claims brought against them by the Plaintiff as well.

### B. Factual Summary

Taking the Plaintiff's reasonable allegations as true, the relevant facts are as follows. The Plaintiff was sexually assaulted by her former boyfriend on June 11, 1998. The Plaintiff reported the assault to the police on August 20, 1998. After reporting the incident, the Plaintiff met with the detective assigned to her case, Detective Hansen. Det. Hansen failed to speak to the Plaintiff's doctor, her neighbor, or the suspect.[1] The Plaintiff was interviewed by ADA Nadarzynski in March 1999. At this meeting, ADA Nadarzynski called the Plaintiff "mentally unstable" and informed her the case warranted a Class B Misdemeanor charge, rather than a felony charge. In April 1999, the Plaintiff learned from Det. Hansen that the suspect would be charged with a Class B Misdemeanor and that a "special Governor's warrant" would not be sought to bring the suspect to the State of New York. At another April 1999 meeting, Det. Hansen stated that he would not interview the suspect or his acquaintances and subsequently approved of a plan to tape record the suspect, criticized the Plaintiff for not reporting the rape "right away," and blamed that delay for the inability of police to conduct a proper investigation. Det. Hansen again refused to interview the Plaintiff's friends. The Plaintiff was also told that no further investigation would occur.

In October 1999, the Plaintiff sent two certified letters to District Attorney Francis Phillips and ADA Albanese complaining of ADA Nadarzynski's "extremely dismis-

---

1. The suspect apparently resided out of state.

sive attitude" and dishonesty regarding the legal process. The Plaintiff next contacted the police through Mark Kotlarich in March 2000 and discussed what she considered to be the "complete lack of an investigation." In June 2000, the Plaintiff signed the Class B Misdemeanor charges.

The Plaintiff met with the newly assigned ADA on her case, Bianchi, in June 2000. In August 2000, the suspect was arraigned on a Class B Misdemeanor charge. The Plaintiff was informed by Det. Hansen in the fall of 2000 that the suspect had pleaded not guilty. The Plaintiff was told by ADA Gilbon in November 2000 that there was a minor problem with the case but "not to worry because there was no legal basis for the judge to rule against us in this matter." The Plaintiff then found out in January 2001 from ADA Gilbon that the case had been dismissed and would not be appealed. In late January or early February 2001, the Plaintiff went to the D.A.'s Office to review her file. The Plaintiff states she discovered that prosecutors had failed to oppose a motion to dismiss within the allotted time period and, consequently, the judge had dismissed the case. When the Plaintiff asked ADA Gilbon for the opposition papers, ADA Gilbon replied that they were misplaced. Because the statute of limitations clock would have begun on December 23, 2000, this dealing is the only contact, according to the complaint, which occurred during the three-year period before the Plaintiff filed her complaint. The Plaintiff's final interaction with the Greenwood Police Department was in February 2001.

## II. The 12(b)(6) Standard for Pro Se Pleadings

A claim is dismissed on the basis of a plaintiff's inability to prove any set of facts supporting her claim and not on the basis of how well-pleaded it is. *Hughes v. Rowe,*

449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (unartful pro se pleading dismissed only if it is beyond doubt plaintiff can prove no set of facts in support of claim). Dismissal of a complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). As is required on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint are accepted to be true for purposes of these motions, and all reasonable inferences are drawn therefrom in favor of plaintiff. *Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003). The issue is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

## III. Statute of Limitations

### A. Police Defendants

█ This Court first examines the timeliness of the Plaintiff's claims. Section 1983 claims arising in the State of New York are governed by a three-year statute of limitations. *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (holding that if state law provides multiple statutes of limitations for personal injury actions, the general or residual statute for personal injury actions should be used for 1983 actions). Therefore, the question is when a plaintiff knew or had reason to know of the harm as determined by federal law. *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994). Assuming the Plaintiff's allegations are true, the timing

of when the Plaintiff became aware of the discriminatory act is the Court's focus and not when the consequence of that act became painful. *See Del. State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981).

██ According to Plaintiff's complaint, she first met with Det. Hansen in August 1998. In April 1999, the Plaintiff was informed by Detective Hansen that her alleged attacker would be charged with a Class B Misdemeanor. It was at that meeting that the Plaintiff reports that Det. Hansen refused to interview the suspect or his acquaintances, approved of the Plaintiff's friends' plan to tape record the suspect without offering protection, blamed the Plaintiff for not reporting the rape "right away" and, therefore, for the inability of police to conduct a proper investigation, and refused to interview the Plaintiff's friends. Arguably the Plaintiff was aware of the alleged discriminatory act at that point but certainly aware as of August 2000 when the suspect was arraigned on a Class B Misdemeanor instead of a felony charge. The Plaintiff's only interaction with Sergeant Kotlarich allegedly occurred in March 2000.

According to the complaint, the Plaintiff's final interaction with any member of the Greenwood Police Department was in February 2001 when the Plaintiff reviewed her case file. The Plaintiff again brought up Det. Hansen's failure to interview the suspect. The Plaintiff's interaction that day only touched on issues already discussed with Det. Hansen. Those discriminatory acts complained of by the Plaintiff probably occurred as early as 1999 or at least by August 2000. Because the Police Defendants' allegedly discriminatory actions took place more than three years prior to the date the complaint was filed,

the Plaintiff's complaint is time-barred as to Defendants Greenwood Lake Police Department, Mark Kotlarich, and John Hansen.

## B. County Defendants

The Plaintiff alleges a bias against rape victims on the part of the county and district attorney defendants in violation of her constitutional rights under § 1983. This Court, as stated above, must determine when the alleged violation transpired. Based on the facts presented by the Plaintiff, she learned about most of the county and district attorney defendants' violative acts when she reviewed her file at the District Attorney's office in late January or early February 2001. The Plaintiff not only knew of the misdemeanor charge sought but also learned of the exact charge after the arraignment much before the three-year window in which she must file suit. In order to determine whether the statute of limitations has expired, the interaction(s) with each defendant are analyzed.

██ Based on the facts presented in the Plaintiff's complaint, the following assistant district attorneys were involved in her case and are now defendants in this case. First, the Plaintiff's case was handled by ADA Tanine Nadarzysnki, who handled her case until July of 2000. Therefore, ADA Nadarzysnki cannot be held accountable for anything occurring after December 23, 2000—the beginning of the statute of limitations time period. ADA Mark Bianchi took over the case in July of 2000. However, ADA Bianchi was not served with the complaint or summons. Pursuant to Fed. R. Civ. Proc. 4, the action must be dismissed under Rule 12(b)(5) for insufficiency of service of process. Therefore, pursuant to the statute of limitations and Rule 12(b)(5), ADA Bianchi's motion to dismiss is granted. Next, ADA

Mary Ellen Albanese allegedly decided not to increase the charge to a felony in August of 2000. Again, the last action taken by ADA Albanese was not within the statute of limitations time period. All of the above defendants, except for ADA Bianchi, are dismissed from the action because the claims against them are untimely.

ADA Melissa Gilbon, however, did interact with the Plaintiff during the statutory time period. In January 2001, ADA Gilbon allegedly communicated with the Plaintiff and agreed to allow the Plaintiff access to her case file. In her communication, ADA Gilbon informed the Plaintiff that the case had been dismissed and no appeal would be undertaken. The Plaintiff claims that she allegedly learned of either the dismissal or the decision not to appeal at that time. Later that month, the Plaintiff allegedly reviewed all the materials contained in her case file. It was upon this inspection that the Plaintiff claims she discovered new information as to what had been occurring in her case and of the judge's dismissal order in which he cited the fact that the Orange County District Attorney's Office (the "D.A.'s Office") did not oppose dismissal.

■ Under federal law, the statute of limitations begins to run once a plaintiff knows or has reason to know of the injury on which her claim is based. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir.1997); *see also Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994). The Plaintiff argues that she did not fully know the extent of the allegedly discriminatory conduct on the part of the Defendants until she viewed the prosecution's case file in early 2001. It was at that time that the Plaintiff allegedly learned of the prosecution's alleged failure to oppose dismissal of the charges against her former boyfriend. This Court, however, does not need to reach the statute of limitations

question for ADA Gilbon and District Attorney Francis Phillips (the "D.A.") as the Plaintiff's complaint against them is blocked by prosecutorial immunity.

## IV. Prosecutorial Immunity

■■ Plaintiff's claims against the remaining ADA and the D.A. are not permitted by way of the Eleventh Amendment of the U.S. Constitution. "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir.1988). In representing the State of New York, the D.A. is protected by the Eleventh Amendment. *Maier v. Phillips*, 205 F.3d 1323, 2000 WL 234453, *1 (2d Cir.2000) ("[T]he Eleventh Amendment shields Phillips from liability because he was acting in his official prosecutorial capacity...."). ADA Gilbon and the D.A. were acting in their official capacities when deciding how to charge the Plaintiff's alleged attacker. Therefore, the Plaintiff's claims against ADA Gilbon and the D.A. are dismissed.

## V. Orange County as a Policymaker

■ The Plaintiff alleges that the County has a bias against rape victims which impacts its policy toward rape victims. The question at hand, therefore, is whether the Plaintiff has sufficiently alleged an unconstitutional custom, policy, or practice on the part of the County. Pursuant to 42 U.S.C. § 1983, a local government may be held liable for the constitutional torts committed by its officials, according to a municipal policy, practice, or custom. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To state a claim against a municipality or person under 42 U.S.C. § 1983, a plaintiff must allege the deprivation was

caused by an official policy or custom of that municipality. *Id.* The County argues that the Plaintiff fails to state a claim under 1983 because she has not identified an unconstitutional custom, policy, or practice that caused a civil rights violation. In particular, the County contends that the Plaintiff's allegations lack particularity, clarity, and a causal link to her alleged civil rights violations.

The Second Circuit Court of Appeals has unequivocally held that "prosecutorial acts may not 'fairly be said to represent official policy' of the County," because "when prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy,* 853 F.2d 73 (2d Cir.1988) (citations omitted); *see also Doe v. Smith,* 704 F.Supp. 1177, 1184 (S.D.N.Y.1988). No county policy can require district attorneys to depart from the policy of the state, nor does the county have a right to establish policy concerning how a district attorney should prosecute violations of state criminal laws. *Id.* "Indeed, it would be a violation of a district attorney's ethical obligations as counsel for the State in a criminal proceeding to permit himself to be influenced in the performance of his duties by so-called policies of a county." *Id.* at 77.

As a result, the Plaintiff's allegations against the County for the alleged actions of the D.A. or his employees form no basis for county liability.

## VI. District Attorney's Office as an Unsuable Entity

■ The final defendant is the D.A.'s Office itself. The Defendants argue the D.A.'s Office is not a proper party to this action, because the D.A.'s Office is not a legal entity capable of being sued. The Defendants cite *Gonzalez v. City of New York,* 1999 WL 549016, at *1 (S.D.N.Y. 1999) (finding that the district attorney's office did not have an existence separate from the district attorney), *Steed v. Delohery,* 1998 WL 440861, 1998 U.S. Dist. LEXIS 2754 (S.D.N.Y.1998) ("The New York County District Attorney's Office is not a suable entity."), and several cases in which, Defendants argue, an analogous subdivision of a municipality was sued but dismissed from the case for the same reasons the D.A.'s Office in this instance should be dismissed. In *Smith v. Gribetz,* 958 F.Supp. 145 (S.D.N.Y.1997), however, the court stated, in dictum, that a county district attorney's office is suable. The *Gribetz* court held that the office was not suable on other grounds, namely the Eleventh Amendment. Following the *Gonzalez* and *Steed* decisions in which a § 1983 claim was made against a district attorney's office and dismissed based on it not being a suable entity, this Court finds that the instant D.A.'s Office is not a suable entity. Therefore, the D.A.'s Office's motion to dismiss is granted.

## VII. Conclusion

Based on the foregoing, the complaint is barred by the applicable three-year statute of limitations, and the motions to dismiss as to the Greenwood Lake Police Department, Police Chief Mark Kotlarich, Detective John Hansen, ADA Mary Ellen Albanese, ADA Mark Bianchi, and ADA Janine Nadarzynski are hereby granted. The Eleventh Amendment bars suit against DA Francis Phillips and ADA Melissa Gilbon, and the motions to dismiss on their behalf are hereby granted. Having found the D.A.'s Office not to be a legal entity capable of being sued, the D.A.'s Office motion to dismiss is hereby granted. Orange County's motion to dismiss is hereby denied because the Plaintiff failed to state a claim of a constitutionally violative custom, practice, or policy under § 1983.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.